

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JUDGE GETTLEMAN

| | |
|---|---|
| RONNIE EVANS,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, and CHICAGO POLICE OFFICERS JOSEPH McCARTHY, Star 7818, ROBERT HOFER, Star 3860, R. BULLINGTON, Star 8684, MICHAEL KOZENKO, Star 7577, J. HLADICK, Star 18980, RICHARD COYLE, Star 13046, MARK SMITH, Star 12935, and TONY GREEN, Star 18670,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  No.<br>)<br>)  MAGISTRATE JUDGE DENLOW<br>)<br>)  JURY DEMANDED<br>)<br>)<br>)<br>)<br>)<br>) |

**00C 7222**

## COMPLAINT

NOW COMES the plaintiff, RONNIE EVANS, by his attorneys, ANITA RIVKIN-CAROTHERS & ASSOCIATES, and ALEXANDER & ASSOCIATES, LTD., and complaining of the defendants, CITY OF CHICAGO, and CHICAGO POLICE OFFICERS JOSEPH McCARTHY, ROBERT HOFER, R. BULLINGTON, MICHAEL KOZENKO, J. HLADICK, RICHARD COYLE, MARK SMITH, and TONY GREEN, state as follows:

**INTRODUCTION**

1. This is a civil action seeking damages against defendants for (1) conducting the affairs of an enterprise, the Chicago Police Department, through a pattern of racketeering activity against the plaintiff, including beatings, threats, strip searches, false arrests, evidence planting, perjury, and malicious prosecution, in order to obstruct justice, and intimidate and retaliate against a

1

witness in a death investigation and related federal civil rights suit; (2) depriving plaintiff, while acting under color of law as Chicago Police Officers, of rights secured by the Constitution and laws of the United States, including the rights secured by the 4th and 14th Amendment to the Constitution, by depriving plaintiff of his liberty through malicious prosecution as part of the witness intimidation scheme; (3) the City of Chicago's failure to properly instruct, supervise, control and discipline the defendant officers, even after the City was on notice of the defendant officers' illegal activities; and (4) related State-law violations, including Malicious Prosecution and Intentional Infliction of Emotional Distress.

**JURISDICTION**

2. This action is brought pursuant to 18 U.S.C. sec. 1961 et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and pursuant to 28 U.S.C. sec. 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. Sections 1331 and 1341(3) and (4) and 1343, and the aforementioned constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to Section 1367 to hear and decide claims arising out of state law.

**PARTIES**

3. Plaintiff is an African-American citizen of the United States, who currently resides in Chicago, Illinois.

4. Defendants McCarthy, Hofer, Bullington, Kozenko, Hladick, and Coyle were, at all times material to this complaint, Caucasian police officers employed by the City of Chicago, Illinois. Defendants Smith and Green were, at all times material to this complaint, police officers

2

employed by the City of Chicago, Illinois. All the defendant officers are being sued individually and may be collectively referred to as "the individual officers."

5. Defendant City of Chicago (hereinafter "CITY"), at all times material to this complaint, was a municipality duly incorporated under the laws of the State of Illinois, and is and was the employer of the police personnel named herein as agents of the CITY. It is sued directly under the Count III failure to supervise, train, control and discipline claim, and pursuant to the doctrine of respondent superior in the related State law claims.

6. At all times relevant hereto, defendant officers were acting under color of the statutes, ordinances, regulations, customs and usages of the State of Illinois, the City of Chicago, and the Chicago Police Department ("CPD."), and within the scope of their employment with defendant CITY.

**FACTS**

7. On March 22, 1997, plaintiff's cousin, Frankie Ann Perkins, a 37-year old African-American mother of three, was lawfully walking in her neighborhood in the vicinity of 3340 West Van Buren Street, Chicago.

8. Without probable cause to stop or search Frankie Ann Perkins, defendant officers McCarthy and Hofer did stop, search and arrest Ms. Perkins.

9. During the arrest of Ms. Perkins, defendant officers McCarthy and Hofer, of the Special Operations Section of the Chicago Police, choked and physically abused the unarmed Ms. Perkins, then stood by and watched while she died from conditions caused by their abuse.

10. Defendant Hofer, trained in CPR, never attempted CPR on Ms. Perkins, and instead instructed paramedics to not attempt to revive Ms. Perkins, although defendant Hofer had

detected a pulse in Ms. Perkins seconds before paramedics arrived, a fact he did not relate to the paramedics.

11. As a result of the killing of Frankie Ann Perkins, her estate filed a federal civil rights lawsuit, No. 97 C 2389, in the Northern District of Illinois. The City of Chicago settled this case for the sum of $500,000.

12. Plaintiff Ronnie Evans, along with others including Anthony Gray, witnessed the choking of his cousin by Hofer and McCarthy in a vacant lot next to his home.

13. The day following the March 22, 1997 killing of Frankie Ann Perkins, Ronnie Evans was interviewed by a Chicago television station regarding the killing. The interview, during which Ronnie Evans accused the two officers of strangling his cousin, was broadcast on the evening news and observed by at least one of the two officers involved in the killing.

14. Officers McCarthy and Hofer recognized Ronnie Evans as someone they had seen in the neighborhood where Frankie Ann Perkins resided.

15. Immediately following the killing of Frankie Ann Perkins, Ronnie Evans, among others including an Anthony Gray, gave a statement to the Office of Professional Standards ("OPS") and to homicide investigators, where he again stated that he witnessed the two officers strangle his cousin.

16. Officers Hofer and McCarthy were made aware of these statements by the Chicago Police Department. They then discussed ways in which they could intimidate Ronnie Evans, Anthony Gray, and others into retracting their statements.

17. Officers Hofer and McCarthy then agreed and conspired together, and with other officers in the Special Operations Section and the 11th District of CPD, to form a plan to

4

intimidate, retaliate against, and discredit Ronnie Evans and other witnesses. This plan included threats, which, if not successful, would be followed up by beatings, harassment, arrest, and prosecution. As part of this conspiracy to intimidate witnesses, Hofer and McCarthy enlisted the aid and support of other 11th District and Special Operations Section Chicago Police officers, including Officers Bullington, Hladick, Kozenko, Coyle, Smith, and Green, and others unamed.

18. As part of this conspiracy, approximately two weeks after the killing of Frankie Ann Perkins, Officers McCarthy and Bullington drove to the home of Ronnie Evans and there questioned him about his statement on the television news. Then and there the two officers threatened Ronnie Evans with unspecified harm if he did not retract his statement.

19. It was further part of the conspiracy that approximately two days after the first threat, Officers McCarthy and Bullington returned to the home of Ronnie Evans. Then and there the two officers told Ronnie Evans that they knew he was on probation, and that if he did not retract his statement he was going to the penitentiary. The officers also searched Ronnie Evans without probable cause.

20. In April, 1997, the estate of Frankie Ann Perkins filed a civil rights lawsuit against the City and two police officers, 97 C 2389, N.D. of Illinois. Shortly thereafter, Officers McCarthy and Hofer were made aware by CPD of the federal lawsuit. At this time the goals of the conspiracy expanded to intimidate Ronnie Evans and others from being witnesses in the federal suit, and to retaliate for these witness's cooperation with the federal case.

21. It was further part of the conspiracy that in April, 1997, Officers McCarthy, Bullington, Kozenko, and Coyle approached Ronnie Evans who was lawfully sitting in his backyard. Without probable cause or lawful justification, the officers ordered Ronnie Evans to

5

come out of the yard and to put his hands on the police car. They then ordered Mr. Evans to strip all his clothes off while standing outside of the police car. After Mr. Evans complied with the order, the officers used their hands to spread the cheeks of Mr. Evans' buttocks apart, and then shined a flashlight up his anus while laughing at Mr. Evans. They then drove off after letting Mr. Evans go.

22. It was further part of the conspiracy that on May 12, 1997, with the earlier intimidation tactics unsuccessful, Officers McCarthy, Bullington, Kozenko, and Coyle, approached the home of Ronnie Evans. Although the officers had no warrant and no lawful justification, they smashed open the back door of the home of Ronnie Evans, and with guns drawn, ordered Mr. Evans out into the hallway. When Mr. Evans complied with the order, one of the officers struck him, knocking him to the ground.

23. The remaining officers then continued beating Ronnie Evans while Officer McCarthy stood by and watched. The officers then dragged Ronnie Evans out to a police car, asking "where is the other guy?" The officers then spotted Anthony Gray, another witness to the killing of Frankie Ann Perkins, and said "there is the other one." The officers grabbed Anthony Gray and a Doris Jones (who had protested the treatment of Anthony Gray and Ronnie Evans) and arrested them without probable cause. They then drove Ronnie Evans, Anthony Gray, and Doris Jones to 11th District CPD headquarters.

24. Upon arrival at the 11th District, the four officers continued to beat Ronnie Evans. They then forced Ronnie Evans to strip naked in front of Doris Jones, and searched his anus, also in front of Doris Jones.

6

25. Then Officer McCarthy and Bullington paraded Ronnie Evans around the police station, loudly exclaiming to their fellow officers that "this is the guy who likes to go on TV. Whenever any of you see him, lock him up."

26. Although no controlled substances were found on or about any of the arrestees, Officers McCarthy and Bullington, as part of the conspiracy to intimidate and discredit witnesses against them, falsely and maliciously reported that they had found controlled substances on the arrestees. As a result of the fabricated evidence, Mr. Evans was charged with felony possession of a controlled substance.

27. It was further a part of the conspiracy that Officers Hofer and McCarthy provided false and perjured testimony in state criminal court in order to continue the fabricated case against Ronnie Evans, as well as a violation of probation case based on the fabricated case. Mr. Evans eventually spent 28 months behind bars in the Cook County Jail as a proximate result of the fabricated case, until March 17, 2000, when the case was dismissed on a motion by the State to nolle prosse the charge, indicative of the innocence of Ronnie Evans. In addition, the State withdrew the violation of probation case on or about October, 1999, also indicative of the innocence of Ronnie Evans.

28. Ronnie Evans was released for a short time on house arrest on the May 12, 1997 case. It was further part of the conspiracy that, approximately two weeks after the May 12, 1997 arrest, he was again approached by Officers McCarthy and Bullington. Mr. Evans was sitting on his front porch drinking a beer. While Officer McCarthy watched, Officer Bullington grabbed Ronnie Evans' beer and poured it out. He then made a rapid swinging motion like he was going to strike Mr. Evans, but he stopped his fist short of Mr. Evans' head. When Officer Bullington observed

an eight-year old boy who lived in the same building watching the events, he threatened the boy, stating he would "slap the shit out of [him]." Then the officers departed laughing, after telling Ronnie Evans "we'll be seeing you."

29. It was further part of the conspiracy that on June 8, 1997, following Ronnie Evans' complaint to OPS about his mistreatment during the May 12, 1997 arrest, Mr. Evans was approached by Officer Hladick and other CPD officers from the 11th District. Although Mr. Evans was acting lawfully, Officer Hladick spotted Mr. Evans and ordered him to put his hands on the police car. Then Officer Hladick threatened Ronnie Evans, saying he "ought to whip his ass." Following the threat Hladick and the other officers arrested Ronnie Evans without probable cause or lawful justification, and falsified evidence to claim that Ronnie Evans had possession of a controlled substance when he did not.

30. At a probable cause hearing on June 8, 1997, Hladick offered perjured testimony in a malicious attempt to keep Ronnie Evans incarcerated to further the goal of the conspiracy to intimidate Mr. Evans. Despite this testimony, a finding of no probable cause was entered. Subsequently, Officer Hladick offered perjured testimony before the grand jury to continue the malicious prosecution of Ronnie Evans.

31. Ronnie Evans was temporarily released a few days after the June 8, 1997 arrest. About two weeks later Officer Hladick drove his squad car to Ronnie Evans' home and stopped in front of Ronnie Evans' front porch where Mr. Evans was seated. Then Officer Hladick used his squad car's public address system to loudly announce "Ronnie, we are coming back to get you." This was an attempt to further the goal of the conspiracy of intimidating Mr. Evans as a witness.

32. It was further part of the conspiracy that on July 14, 1997, Officers Smith and Green, 11th District officers, of which Smith had previously been heard by witnesses in the neighborhood threatening to "get" Ronnie Evans, stopped and arrested Ronnie Evans without lawful justification or probable cause. Although Mr. Evans was breaking no laws and possessed no drugs, Officers Smith and Green falsified evidence to charge Mr. Evans with felony possession of a controlled substance. Officer Green gave false and misleading testimony in a malicious attempt to keep Mr. Evans incarcerated. Although a judge threw out this charge on the basis of lack of probable cause, the State, based on the false testimony of Officer Green, obtained a grand jury indictment for the charge.

33. It was further part of the conspiracy that on Sept 21, 1997, Officers McCarthy and Bullington approached Ronnie Evans, who was lawfully in his neighborhood. Then, without lawful justification or probable cause, the two officers arrested Ronnie Evans, charging him with disorderly conduct. When Ronnie Evans asked the officers why he was being arrested, they replied he "had been a bad boy." The officers never showed up in court to testify in the disorderly conduct charge, which was dismissed, indicative of the innocence of Mr. Evans.

34. It was further part of the conspiracy that during the summer of 1997 Officer Hofer and another officer approached Ronnie Evans and interrogated him about some of the plaintiffs in the federal civil rights lawsuit regarding Frankie Ann Perkins.

35. It was further part of the conspiracy that Officers McCarthy and Bullington approached Ronnie Evans at two different times during the summer of 1997 demanding that he call OPS and retract his statement that he saw Officers McCarthy and Hofer strangle his cousin.

Officers McCarthy and Bullington threatened to arrest Ronnie Evans if he did not comply with their demands.

36. It was further part of the conspiracy that Officer Green gave false and perjurious testimony in or about February, 2000 in a malicious attempt to keep Ronnie Evans incarcerated on false charges.

## Count I

## RICO Complaint Against Officers for Racketeering Activity

1-36 Paragraphs 1 through 36 are realleged as if fully set forth herein.

37. The racketeering enterprise in this cause is the Chicago Police Department ("CPD"), in and through which the defendant officers used their official positions to illegally attempt to obstruct justice, intimidate witnesses, and retaliate against witnesses.

38. As detailed above, defendant Officers McCarthy, Hofer, Bullington, Kozenko, Hladick, Coyle, Smith and Green conducted or participated in the conduct of the CPD through a pattern of racketeering activity, and conspired amongst themselves and others unnamed to do the same.

39. By "racketeering activity" as used above, the defendant officers violated several criminal laws as detailed above, including (1) an act or threat involving extortion as chargeable under Illinois law and punishable by imprisonment for more than one year; (2) obstruction of justice in violation of 18 U.S.C. 1503; (3) obstruction of a criminal investigation in violation of 18 U.S.C. 1510; (4) obstruction of state or local law enforcement in violation of 18 U.S.C. 1511;

10

(5) tampering with a witness, victim or informant in violation of 18 U.S.C. 1512; and (6) retaliating against a witness, victim, or informant in violation of 18 U.S.C. 1513.

40. As a direct and proximate result of the racketeering violations described above, plaintiff Ronnie Evans has been injured in his business and property, including expending thousands of dollars in attorney fees to fight the false charges against him, and thousands of dollars in lost wages during his 28 months incarceration on false charges, and damage to his reputation and future earning ability.

WHEREFORE, plaintiff Ronnie Evans demands judgment against the individual officers, jointly and severally, for compensatory damages in amount in excess of $100,000, and further demands judgment against the individual officers, jointly and severally, for treble damages in an amount in excess of $300,000, and further demands attorney fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

## Count II

### 1983 Malicious Prosecution, 4th and 14th Amendment Violations

1-36 Paragraphs 1 through 36 above are realleged here as if fully set forth herein.

37. By participating in the above-described conspiracy, the individual officers sought to and did in fact maliciously prosecute Ronnie Evans on false charges for which there was no probable cause, including the felony controlled substance charges from the May 12, 1997 arrest by Officers McCarthy, Bullington, Kozenko, and Coyle, which charges were resolved in plaintiff's favor indicative of his innocence by a State motion to nolle prosse the charges on March 17, 2000.

11

38. It was part of the conspiracy to give ongoing false and perjured testimony in order to keep Ronnie Evans incarcerated on the false controlled substance charges.

39. The individual officers proceeded with the charges against the plaintiff knowing they were false.

40. The ongoing false and perjured testimony caused repeated and ongoing deprivations of liberty for Ronnie Evans, which deprivations without lawful justification constitute violations of Mr. Evans' Constitutional rights under the 4th and 14th Amendments.

41. As a direct and proximate result of these Constitutional violations, Mr. Evans was damaged, including the value of his liberty for 28 months of incarceration, lost wages, attorneys fees, pain and suffering, and mental and emotional suffering and anguish.

WHEREFORE, plaintiff Ronnie Evans demands judgment against the individual officers, jointly and severally, for compensatory damages in amount in excess of $300,000, and further demands judgment against the individual officers, jointly and severally, for punitive damages in an amount in excess of $1,000,000, and further demands attorney fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

### Count III

### 1983 Action Against City for Failure to Properly Instruct, Supervise, Control & Discipline

1-41. Paragraphs 1-41 above are realleged here as if fully set forth herein.

42. The Constitutional violations detailed above were only possible for the defendant officers to perpetrate because of the customs, policies, and practices of CPD, whereby the CITY failed utterly to instruct, supervise, control and discipline the defendant officers.

43. These failures include (1) failure to take any steps to control, instruct, or discipline the defendant officers and to try to prevent further witness intimidation, even after the CITY was on actual notice that numerous instances of witness intimidation tactics had in fact occurred; (2) After the CITY was on notice that defendant officers were falsifying charges against Ronnie Evans, rather than attempt to correct this injustice, the CITY instead unsuccessfully took steps to prevent evidence of the intimidation conspiracy from being heard in State Court proceedings against Ronnie Evans; (3) maintaining an atmosphere and climate where Constitutional violations are not prosecuted or punished, thus encouraging officers to violate rather than respect the Constitutional rights of citizens, for example, no discipline was instituted against any officer for the violations complained of above, or for the killing of Frankie Ann Perkins (notwithstanding the $500,000 payment of taxpayer funds), except that one officer was suspended for a few days for "disrespecting the dead body" of Frankie Ann Perkins by dragging her on the ground and throwing her headfirst into a van, even though in sworn testimony Officer Hofer stated that he felt a pulse after this abuse; (4) failure to track, notice, act upon, or correct patterns of abuse by officers with multiple complaint files, thus encouraging a climate of Constitutional abuses; and (5) failure to instruct or train officers in what constitutes witness intimidation, and the proper procedures for dealing with investigations of police conduct.

WHEREFORE, plaintiff Ronnie Evans demands judgment against the defendant CITY, for compensatory damages in amount in excess of $300,000, and further demands attorney fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

## Count IV

## Malicious Prosecution — State Claim Against City and Officers

1-36. Paragraphs 1 through 36 above are realleged here as if fully set forth herein.

37. By participating in the above-described conspiracy, the individual officers sought to and did in fact maliciously prosecute Ronnie Evans on false charges for which there was no probable cause, including the felony controlled substance charges from the May 12, 1997 arrest by Officers McCarthy, Bullington, Kozenko, and Coyle, which charges were resolved in plaintiff's favor indicative of his innocence by a State motion to nolle prosse the charges on March 17, 2000.

38. It was part of the conspiracy to give ongoing false and perjured testimony in order to keep Ronnie Evans incarcerated on the false controlled substance charges.

39. The individual officers proceeded with the charges against the plaintiff knowing they were false.

40. The CITY is sued in this count pursuant to the doctrine of respondent superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant CITY, and while acting within the scope of this employment.

41. As a direct and proximate result of these Constitutional violations, Mr. Evans was damaged, including the value of his liberty for 28 months of incarceration, lost wages, attorneys fees, pain and suffering, and mental and emotional suffering and anguish.

WHEREFORE, plaintiff Ronnie Evans demands judgment against the CITY and the individual officers, jointly and severally, for compensatory damages in amount in excess of $300,000, and further demands judgment against the individual officers, jointly and severally, for

14

punitive damages in an amount in excess of $1,000,000, and further demands attorney fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

## Count V

### Intentional Infliction of Emotional Distress Against CITY and Officers

1-36. Paragraphs 1 through 36 are realleged as if fully set forth herein.

37. The above detailed conduct by the defendants was extreme and outrageous, exceeding all bounds of human decency.

38. Defendants performed the acts detailed above with the intent of inflicting severe emotional distress or with knowledge of the high probability that the conduct would cause such distress.

39. As a direct and proximate result of this conduct, plaintiff did in fact suffer severe emotional distress, resulting in injury to his mind, body, and nervous system, including loss of sleep, mental anguish, nightmares, and flashbacks.

40. The CITY is sued in this count pursuant to the doctrine of respondent superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant CITY, and while acting within the scope of this employment.

WHEREFORE, plaintiff Ronnie Evans demands judgment against the CITY and the individual officers, jointly and severally, for compensatory damages in amount in excess of $300,000, and further demands judgment against the individual officers, jointly and severally, for

punitive damages in an amount in excess of $1,000,000, and further demands attorney fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

Respectfully submitted,

RONNIE EVANS

By: *[signature]*
One of his attorneys

Anita Rivkin-Carothers
ANITA RIVKIN-CAROTHERS & ASSOCIATES
33 North LaSalle
Suite 3300
Chicago, Illinois 60602
312-641-2901


Daniel S. Alexander
ALEXANDER & ASSOCIATES, LTD.
33 North LaSalle
Suite 3300
Chicago, Illinois 60602
312-641-2901
Email Dan@WindyCityLaw.Com

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**JUDGE GETTLEMAN**
**MAGISTRATE JUDGE DENLOW**

## I. (a) PLAINTIFFS
RONNIE EVANS

## DEFENDANTS
CITY OF CHICAGO, OFFICER McCART #7818, OFFICER HOFFER #3860, OFFICER BULLIN #8684, OFFICER KOZNEKO #7577, OFFICER HLADIC #18980, OFFICER COYLE #13046, OFFICER SMITH #12935 and OFFICER GREEN #18670

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: COOK
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: COOK
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

DOCKETED NOV 17 2000

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
(312) 641-2901
Anita Rivkin-Carothers & Daniel Alexander
33 North LaSalle St., Suite 3300
Chicago, IL 60602

ATTORNEYS (IF KNOWN)
00C 7222

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 USC 1983

## VII. REQUESTED IN COMPLAINT
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23
DEMAND $ 1,000,000
CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII. This case
☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____ previously dismissed by Judge _____

DATE 11/16/00
SIGNATURE OF ATTORNEY OF RECORD

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of RONNIE EVANS
VS.
CITY OF CHICAGO, et al.

JUDGE GETTLEMAN

MAGISTRATE JUDGE DENLOW

Case Number: **00C 7222**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

RONNIE EVANS

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: Anita Rivkin-Carothers | NAME: Daniel S. Alexander |
| FIRM: | FIRM: |
| STREET ADDRESS: 33 North LaSalle St. Suite 3300 | STREET ADDRESS: 33 North LaSalle Street, Suite 3300 |
| CITY/STATE/ZIP: Chicago, IL 60602 | CITY/STATE/ZIP: Chicago, IL 60602 |
| TELEPHONE NUMBER: (312) 641-2901 | TELEPHONE NUMBER: (312) 641-2901 |
| FAX NUMBER: (312) 332-3179 | FAX NUMBER: (312) 332-3179 |
| E-MAIL ADDRESS: None | E-MAIL ADDRESS: None |
| IDENTIFICATION NUMBER: 6189478 | IDENTIFICATION NUMBER: 6202318 |
| MEMBER OF TRIAL BAR? YES [X] NO [ ] | MEMBER OF TRIAL BAR? YES [X] NO [ ] |
| TRIAL ATTORNEY? YES [X] NO [ ] | TRIAL ATTORNEY? YES [X] NO [ ] |
| | DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR? YES [ ] NO [ ] | MEMBER OF TRIAL BAR? YES [ ] NO [ ] |
| TRIAL ATTORNEY? YES [ ] NO [ ] | TRIAL ATTORNEY? YES [ ] NO [ ] |
| DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] | DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] |