FILED NOV 1 2 2002
Judge Robert W. Gettleman
United States District Court

DOCKETED
NOV 1 4 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONNIE EVANS, )
)
Plaintiff, )
) No. 00 C 7222
v. )
) Judge Gettleman
CITY OF CHICAGO, et. al. )
)
Defendants. )

### NOTICE OF FILING

To: Daniel S. Alexander         Allen Duarte
    33 N. LaSalle Street, Suite 3300    30 N. LaSalle, Suite 900
    Chicago, Illinois 60602       Chicago, Illinois 60602

PLEASE TAKE NOTICE that today we have filed with the Clerk of the above Court:
**(1) THE OFFICERS' LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT; (2) ADDENDUM OF CRIMINAL COURT TRANSCRIPTS TO THE OFFICERS' LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT;** and **(3) THE OFFICERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**, a copy of which is enclosed and is hereby served upon you.

Dated: November 12, 2002.

Sheri H. Mecklenburg
Assistant Corporation Counsel

30 N. LaSalle Street
Suite 1400
Chicago, IL 60602
(312) 744-6905

## CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that she served a copy of the foregoing (1) **THE OFFICERS' LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT; (2) ADDENDUM OF CRIMINAL COURT TRANSCRIPTS TO THE OFFICERS' LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT; and (3) THE OFFICERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**, to the persons named at the address shown in the foregoing NOTICE OF FILING, by hand delivery, before the hour of 5:00 p.m. on November 12, 2002.

                                                                _____
                                                                Sheri H. Mecklenburg

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED NOV 1 2 2002
Judge Robert W. Gettleman
United States District Court

DOCKETED NOV 1 4 2002

| | |
|---|---|
| RONNIE EVANS, | ) |
| Plaintiff, | ) Case No. 00 C 7222 |
| v. | ) |
| CITY OF CHICAGO, et. al. | ) Judge Robert W. Gettleman |
| Defendants. | ) |

### THE OFFICERS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The Individual Officers ("the Officers"), by their attorneys, hereby submit the following Memorandum of Law In Support of their Motion For Summary Judgment:

### I. STATEMENT OF THE CLAIMS

Plaintiff filed this action on November 16, 2000, against eight Chicago Police Officers and the City of Chicago, alleging a RICO claim, federal and state malicious prosecution claims and a state law claim for intentional infliction of emotional distress. On September 4, 2001, this Court dismissed all personal injury claims asserted under RICO, including damage to reputation, lost opportunity and future earning capacity, limiting the RICO claim to "business injury" of lost wages while incarcerated and attorneys' fees; this Court dismissed all claims for malicious prosecution except a state law claim based on the May 12, 1997 and Violation of Probation charges. On September 21, 2001, plaintiff filed an amended complaint, alleging, for the first time, a First Amendment claim. On November 28, 2001, this Court dismissed certain claims, leaving four claims against the Officers: (1) Count I, a RICO claim for actual lost wages and

1

attorneys' fees; (2) Count II, for violation of First Amendment rights; (3) Count IV, a state law claim for malicious prosecution arising out of the May 12, 1997 s and the VOP charge; and (4) Count V, a state law claim for intentional infliction of emotional distress ("IIED").[1]

## II. STATEMENT OF FACTS

For purposes of this motion, the Officers adopt The Officers' LR. 56.1 Statement of Undisputed Material Facts ("Undisputed Facts"), filed in conjunction with this brief.

## III. STATEMENT OF LAW

### A. The Officers Are Entitled To Summary Judgment on the State Law Claim For Malicious Prosecution Because The Charges Were Not Resolved in Plaintiff's Favor.

Under Count IV, plaintiff asserts a state law claim for malicious prosecution based upon the May 12, 1997 charges and the Violation of Probation ("VOP") charges.[2] Under Illinois law, a claim for malicious prosecution must establish that: (1) the defendant brought the underlying suit maliciously and without probable cause; 2) the action terminated in a manner favorable to plaintiff; and (3) the plaintiff suffered some special injury beyond the usual expense, time or annoyance in defending the lawsuit. Cult Awareness Network v. Church of Scientology International, 177 Ill. 2d 267, 274, 685 N.E.2d 1347, 1352 (Ill. 1997), cert. denied 523 U.S. 1020 (1997). The Officers are entitled to summary judgment on the malicious prosecution claim

---

[1] Count III is directed solely against the City, for a policy of violating First Amendment rights. If the Officers are entitled to judgment as a matter of law on the allegations of the underlying First Amendment violations, then the City would be entitled to judgment under Count III. Los Angeles v. Heller, 475 U.S. 796 (1986).

[2] Plaintiff's convictions on both the June 8, 1997 and the July 14, 1997 charges, preclude a claim for malicious prosecution based upon those charges. See Heck v. Humphrey, 512 U.S. 477, 486-88 (1994). See also September 4, 2001 Opinion of this Court, p. 21, dismissing all claims for malicious prosecution except state law claims based upon the May 12, 1997 charges and the Violation of Probation charges ("VOP").

2

because neither the May 12, 1997 charges nor the VOP were terminated in plaintiff's favor.

### 1. The May 12, 1997 Charges Were Not Resolved In Plaintiff's Favor.

The May 12, 1997 charges were terminated by the granting of the prosecutor's motion to *nolle prosequi* the charges against the plaintiff. Undisputed Fact No. 58. A prosecutor's motion to *nolle prosequi* criminal charges is not resolved in favor of the plaintiff unless the *nolle prosequi* is entered for reasons indicative of the innocence of the accused. Swick v. Liautaud, 169 Ill.2d 504, 513-14, 662 N.E.2d 1238, 1242-43 (Ill. 1996) (holding that a court should look at the reasons for the *nolle prosequi*, and plaintiff bears the burden of proving that the reasons are consistent with his innocence). A *nolle prosequi* entered is not indicative of innocence when it "is the result of an agreement or compromise with the accused..." Id. See also Logan v. Caterpillar Inc., 246 F.3d 912, 925 (7th Cir. 2001)(affirming summary judgment in favor of the defendants on a malicious prosecution claim where the prosecutor agreed not to prosecute the plaintiff on one charge in return for an agreement on another charge); Washington v. Summerville, 127 F.3d 552 (7th Cir. 1997)(affirming summary judgment in favor of police officers on a state law malicious prosecution claim, because the plaintiff had not met his burden of showing that the *nolle prosequi* was entered for reasons consistent with innocence); Phillips v. Brezek, 2002 WL 596367 *7 (N.D. Ill. 2002) ("the *nolle prosequi* order not stating its reasons for its entry coupled with Plaintiffs' lack of evidence for the reason of the entry, do not establish that the criminal proceedings were terminated in a manner consistent with ... innocence.").

Here, plaintiff cannot meet his burden of showing that the *nolle prosequi* was entered for reasons indicative of innocence. The Officers have submitted undisputed evidence establishing just the opposite. The *nolle prosequi* of the May 12, 1997 charges was entered pursuant to a plea

3

agreement without regard to innocence.[3] Undisputed Fact Nos. 57, 58. Innocence had nothing to do with the *nolle prosequi* entered on the May 12 charges. Because the undisputed facts establish that the *nolle prosequi* of the May 12, 1997 criminal charges was not due to plaintiff's innocence, the Officers are entitled to summary judgment in their favor on plaintiff's state law malicious prosecution claim regarding these charges. Cf. David v. Village of Oak Lawn, 954 F.Supp. 1241, 1244 (N.D. Ill. 1996)(Gettleman, J.)(summary judgment granted on a malicious prosecution claim where the criminal case was stricken with leave to reinstate, which "is not a legal termination of the proceedings in a manner indicative of the plaintiff's innocence.").

### 2. The VOP Charges Were Not Resolved In Plaintiff's Favor.

The VOP charges arose out of the probation sentence entered in plaintiff's 1996 conviction. Undisputed Fact Nos. 13, 27. The VOP charges were resolved against plaintiff by an order of "PTU" ("Probation Terminated Unsatisfactory)" and plaintiff served the maximum remaining time on his 1996 conviction. Undisputed Fact No. 55. Therefore, the VOP charge was terminated in a manner indicative of guilt, not innocence.[4]

Because the undisputed facts show that neither the May 12, 1997 charges nor the VOP charges were dismissed due to plaintiff's innocence, the Officers are entitled to judgment as a matter of law in their favor on the state law malicious prosecution claim alleged under Count IV.

---

[3]The prosecutor had no any indication of plaintiff's innocence on the May 12 charges. This same prosecutor had obtained a conviction of plaintiff's May 12 co-arrestee based upon two of the Officers' testimony (Coyle and McCarthy); the criminal court judge, in finding the plaintiff's co-arrestee guilty, specifically stated that she found the Officers' testimony credible. Undisputed Fact No. 59. If plaintiff had gone to trial, this prosecutor would have offered the same testimony to the same judge.

[4]The VOP could not have been resolved in favor of plaintiff because he committed the June 8 and July 14 crimes while on probation. See Undisputed Fact No. 8 and Exhibit A1.

4

## B. The Officers Are Entitled To Summary Judgment On Plaintiff's RICO Claim, First Amendment Claim and IIED Claim Under The Principles of Collateral Estoppel

Plaintiff is collaterally estopped from litigating his RICO, Section 1983 and IIED claims here, because he already litigated those issues in the state criminal court case. "The federal courts generally have... consistently accorded preclusive effect to issues decided by state courts." Allen v. McCurry 449 U.S. 90, 95 (1980). The purpose of according a state court decision preclusive effect under the doctrines of res judicata and collateral estoppel is to reduce unnecessary litigation, foster reliance on adjudication and "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." Id. Thus, collateral estoppel applies to subsequent claims brought in federal court under the RICO Act. County of Cook v. Midcon Corporation, 773 F.2d 892 (7th Cir. 1985). Collateral estoppel applies to Section 1983 claims as well. Henry v. Farmer City State Bank, 808 F.2d 1228 (7th Cir. 1986); Williams v. Valtierra, 2001 WL 1263 (N.D. Ill. 2001)(Kennelley, J.).[5] Collateral estoppel also bars subsequent state law claims, whether civil or criminal. People v. Williams, 59 Ill.2d 557, 560, 322 N.E.2d 461, 462-63 (1975).

In determining the preclusive effect of a state court proceeding, federal courts apply the collateral estoppel law of the state where the prior adjudication occurred. Thompson v. Mueller, 976 F.Supp. 762, 765 (N.D. Ill. 1997). Where the Illinois courts would preclude the parties from re-litigating an issue, the parties will be collaterally estopped in this court as well. Id. Illinois

---

[5]Collateral estoppel has been specifically applied to bar Section 1983 claims asserting First Amendment violations. See Button v. Harden, 814 F.2d 382 (7th Cir. 1987), holding that a teacher's Section 1983 action that he was fired in retaliation for exercising his right of free speech was barred by prior judgment in a state administrative review proceeding, in which plaintiff could have raised his First Amendment ground.

5

law collateral estoppel precludes a party from re-litigating an issue in a later proceeding when:

> (1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issues was necessary to the court's judgments, and (4) those issues are identical to the issues raised in the subsequent suit.

County of Cook v. Midcon Corp., 773 F.2d 892, 898 (7th Cir. 1985).

This case clearly satisfies the requirements for applying collateral estoppel as a bar. Plaintiff was the criminal defendant in the prior case and brought the Motion to Suppress. Undisputed Fact No. 43. In Illinois, a ruling on a motion to suppress constitutes a prior adjudication on the merits for purposes of collateral estoppel. Ramey v. Smith, 1991 WL 42166 (N.D. Ill. 1991)(Kocoras, J.). Indeed, the Northern District of Illinois has granted summary judgment to law enforcement defendants in civil cases based upon the preclusive effect of the plaintiff's loss of a motion to suppress in Illinois criminal courts. See, e.g., Walls v. Bradley, et al., 2001 WL 855874, (N.D. Ill. July 24, 2001)(Hibbler, J.); Williams v. Valtierra, 2001 WL 1263495 (N.D. Ill. October 22, 2001)(Kennelley, J.); Johnson v. Cornelson, 1993 WL 87735 (N.D. Ill. 1993)(Lindberg, J.); Ramey v. Smith, 1991 WL 42166 (N.D. Ill. 1991)(Kocoras, J.). It is irrelevant that the standards of proof operating in the earlier and later suits differ. Id. Guenther v. Holmgreeen, 738 F.2d 879, 888 (7th Cir. 1984), cert. denied, 105 S.Ct. 1182.

In addition, the issues which form the basis of the estoppel were actually litigated and decided in connection with the Motion To Suppress. The record shows that the plaintiff presented both oral argument and live testimony of numerous witnesses over a significant period of time. Undisputed Fact Nos. 41-52. The court allowed in testimony and discovery based upon

6

the issues raised by the motion to suppress, even though such testimony and discovery was far beyond the charges before the criminal court. Undisputed Fact Nos. 41, 51. Plaintiff was unfettered by the criminal court in actually litigating the issues raised by the motion to suppress.

The resolution of the issues was necessary to the court's judgment. The Motion To Suppress raised the issues of harassment, intimidation and retaliation for plaintiff being a witness against the Officers in connection with Ms. Perkins' death. In denying the Motion To Suppress (Undisputed Fact No. 52), the criminal court necessarily rejected the claims of a pattern of harassment, intimidation or retaliation for being a witness against the Officers. A court's ruling on a motion to suppress may operate as a collateral estoppel on any basis appearing in the record, regardless of reasoning advanced or omitted by the criminal court. People v. Wiedman, 168 Ill. App.3d 199, 209, 522 N.E.2d 231, 238 (Ill. App. 1st Dist. 1988). Accord, People v. Page, 614 N.E.2d 1160, 1168 (Ill. 1993) ( "It is enough for application of the doctrine if the record from the earlier proceeding discloses that the issue was actually litigated and determined"). See also Williams v. Valtierra, 2001 WL 1263495 (N.D. Ill. October 22, 2001)(Kennelley, J.)(the court, granting summary judgment for prosecutors on the grounds of collateral estoppel, stated that "[t]hough the state court judge denied [plaintiff]'s motion to suppress without a written or oral opinion articulating his reasons for the decision...the court could not have denied the motion without finding that the ASAs had not coerced [plaintiff]'s confession.").

Finally, the issues actually litigated and decided in the Motion To Suppress are the same as those raised here by the RICO, First Amendment and IIED claims. The motion (and hearing) raised a pattern of police harassment, claiming that the Officers were harassing, intimidating and retaliating against plaintiff for being a witness against McCarthy and Hofer in connection with

7

the death of plaintiff's cousin. The Motion To Suppress was based upon the same incidents alleged in this case to be a pattern of racketeering under Count I, a pattern of intimidation and retaliation for exercising First Amendment rights under Count II and outrageous conduct under Count V. *Compare* Undisputed Fact Nos. 41-52 *with* Nos. 11, 12, 15-30. All plaintiff does here is convert his Motion To Suppress into a federal complaint, cloaking it with the language of RICO, First Amendment and IIED. Asserting the same issues as a different cause of action does not preclude application of collateral estoppel; it is the essence of collateral estoppel.

Plaintiff has fully litigated in the state court the issue of whether the alleged stops, threats and arrests constitute police harassment, intimidation and retaliation against plaintiff for being a witness against two Officers. The doctrine of collateral estoppel bars relitigation, entitling the Officers to summary judgment on Counts I, II and V. See Walls v. Bradley, et al., 2001 WL 855874 *1-2 (N.D. Ill. July 24, 2001)(Hibbler, J.)(the court, granting summary judgment in favor of the officer defendants, stated "the court in Plaintiff's criminal case heard testimony concerning the exact same set of facts and events alleged in this civil complaint and concluded Defendants had not used excessive force against Plaintiff to obtain his statements...Defendants argue Plaintiff is precluded by collateral estoppel from raising this issue again. The Court agrees.").

### C. The Officers Are Entitled To Summary Judgment On The RICO Claim Because Plaintiff Has Not Suffered A Business Injury To Confer RICO Standing.

This Court's September 4, 2001 Opinion limited plaintiff's "business injury" for standing under RICO to lost income while in jail and attorneys' fees. Plaintiff cannot prove any loss of income whatsoever, and certainly suffered no loss of income, nor incurred attorneys fees, due to any RICO conduct. Thus, plaintiff lacks standing to assert a RICO claim, another reason the

Officers are entitled to summary judgment under Count I. See Mira v. Nuclear Measurements Corp., 107 F.3d 466 (7th Cir 1997) (in the absence of an economic loss, plaintiff lacked standing under RICO, and therefore summary judgment in favor of the defendants was proper); County of Cook v. Midcon Corp., 574 F.Supp. 902, 919 (N.D.Ill. 1983)(where the plaintiffs in a RICO claim asserted economic loss caused by acts already determined by a prior court to be valid, the plaintiffs lacked standing under RICO because they could not establish any economic loss caused by wrongful conduct of the defendants).

### 1. Plaintiff Suffered No Loss of Income Due To Any RICO Conduct.

Plaintiff could not have suffered any loss of income due to the alleged RICO conduct of the Officers in 1997, because plaintiff had no source of income during that time. Undisputed Fact No. 9. Plaintiff concedes that he had no actual loss of income; instead, he claims only lost opportunity for income based upon his alleged earnings *since* his release from jail. Undisputed Fact No. 9.[6] Plaintiff cannot prove any actual loss of income needed to confer RICO standing.

In addition, plaintiff cannot claim any loss of income due to his jail time, because plaintiff served his jail time pursuant to his sentences on valid convictions. All jail time served by plaintiff prior to his release on March 17, 2000 was credited against his four-year sentence on the conviction for the June 8, 1997 charges. Undisputed Fact No. 58.[7] Because plaintiff served his jail time as a result of sentencing on his criminal convictions, his assertion of standing under RICO based upon the jail time served impermissibly attacks those convictions. Heck v.

---

[6]This Court has held, in its September 4, 2001 and November 28, 2001 opinions, that the RICO standing cannot be conferred by a "lost opportunity" claim.

[7]Plaintiff concurrently served his time until January 14, 2000 on his 1996 conviction. Undisputed Fact No. 55.

9

Humphrey, 512 U.S. 477, 486-88 (1994). See Hermansen v. Chandler, 211 F.3d 1269 (6th Cir. 2000)(where the plaintiff alleged that the persons involved in his criminal investigation, trial and conviction had committed RICO violations which resulted in the loss of his business and business income, the court held that the RICO claim necessarily impugned plaintiff's conviction and therefore he could not maintain the action). Accordingly, plaintiff has no standing to assert a RICO claim based upon a loss of income due to his jail sentence.

### 2. Plaintiff Incurred No Attorneys' Fees Attributable To Any RICO Conduct.

Plaintiff also did not incur any attorneys' fees due to any alleged RICO conduct of the Officers.[8] Plaintiff admits that he incurred no attorneys' fees as a result of any of the stops, searches or verbal harassment. Undisputed Fact No. 61. Plaintiff admits that he incurred attorneys' fees only as a result of the criminal charges pending against him, and only with respect to attorneys Alexander and Brandstrader, having been represented by public defenders prior to that time. Undisputed Fact No. 61. Like the loss of income, any attorneys' fees arising out of the June 8, July 14 or the VOP charges cannot establish standing for RICO, because that would constitute an impermissible attack on valid convictions. Therefore, the only issue is whether any attorneys' fees incurred were exclusive of the three charges resolved against plaintiff.

Both Mr. Alexander and Mr. Brandstrader charged plaintiff a set fee applicable to all criminal charges, without any division based upon the charges or the work done. Undisputed Fact Nos. 62, 63. Neither Mr. Alexander nor Mr. Brandstrader performed any legal work exclusive of the three charges resolved against plaintiff. Mr. Alexander litigated only the VOP

---

[8]Plaintiff himself has never paid any attorneys' fees, and thus his RICO standing is premised upon alleged debt. Undisputed Fact Nos. 62, 64, 65. This discussion, therefore, is framed in terms of whether plaintiff even *incurred* any attorneys' fees due to the RICO conduct.

charges and the July 14 arrest. Undisputed Fact No. 62. Mr. Brandstrader did no work exclusive of the three charges. Undisputed Fact No. 63.

Plain and simple, plaintiff cannot prove that he incurred any attorneys fees exclusive of the June 8, 1997, July 14, 1997 or VOP charges, all resolved against plaintiff. Since the fees cannot be separated from fees incurred on plaintiff's valid convictions, the fees cannot confer standing for RICO. In the absence of any loss of income or attorneys fees incurred due to the alleged RICO violations, plaintiff lacks standing to assert a RICO claim, and the Officers are entitled to summary judgment as a matter of law on Count I.

### D. The Officers Are Entitled To Summary Judgment On The RICO Claim Because The Evidence Shows That The Elements Of RICO Are Not Present.

In order to prevail on a RICO claim, plaintiff must prove that each individual defendant personally committed at least two predicate acts. Dudley Enterprises, Inc. v. Palmer Corp., 822 F.Supp. 496, 502 (N.D. Ill. 1993). Plaintiff lacks evidence that Officers Hofer, Hladik, Green and Smith each committed at least two predicate acts. Because the June 8 arrest cannot be a RICO predicate act, that leaves evidence of only one act by Officer Hladik: verbally harassing plaintiff on the loudspeaker of his car as he drove past plaintiff's house. Undisputed Fact No. 24. Because the July 14 arrest cannot be a RICO predicate act, there is no evidence of any predicate act by Officers Green and Smith. Undisputed Fact No. 29. Because Officer Hofer's arrest of plaintiff pursuant to a valid warrant cannot be a RICO predicate act, there is only one act by Officer Hofer: asking plaintiff about Frankie Ann Perkins' family. Undisputed Fact No. 21. Officers Hladik, Green, Smith and Hofer are entitled to summary judgment on the RICO claim.

In addition, the Officers are entitled to summary judgment on the RICO claim because

there is no evidence of a proper RICO enterprise. Plaintiff asserts that the enterprise is the Chicago Police Department ("CPD"). Second Amended Complaint, ¶38. In order for a person to be liable under RICO, a person must be either an operator or manager of the enterprise. Reeves v. Ernst & Young, 507 U.S. 170, 179 (1993). Reeves has been extended to apply to persons who knowingly perform services which facilitate the illegal operation by those in charge of the enterprise. Brouwer v. Raffensperger, Hughes & Co., 199 F.3d 961, 967 (7th Cir. 2000). Here, there is no evidence that the Officers operated or managed CPD, or that they facilitated the activities of anyone operating CPD in an illegal manner. The Officers here are merely street officers, with no part in directing the affairs of CPD, nor are their supposed RICO activities facilitating others in illegally directing the affairs of CPD. Thus, CPD is not a proper RICO entity, another reason that the Officers are entitled to summary judgment on the RICO claim.

Finally, plaintiff has failed to allege a sufficient pattern of racketeering activity. "[A] civil RICO plaintiff may no longer get by merely alleging two predicate acts, but must also satisfy the so-called 'continuity plus relationship' test: the predicate acts must be related to one another (the relationship prong) *and* pose a threat of continued criminal activity (the continuity prong)." Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1022 (7th Cir. 1992)(emphasis in original). As Judge Moran stated in Dudley Enterprises, Inc. v. Palmer Corporation, 822 F.Supp. 496, 503 (N.D. 1993):

> The Supreme Court and the Seventh Circuit, however, have been careful to recognize the purpose of RICO – to "reach activities that amount to or threaten long-term criminal activity" – when evaluating the continuity requirement and therefore have generally not applied RICO when the threat is an individual one, rather than a significant threat to society.

Judge Moran analyzed the continuity requirement in terms of the number and variety of acts and

12

length of time over which they were committed; the number of victims; the number of separate schemes; and the occurrence of distinct injuries, and concluded that "[w]hile their allegations would probably provide sufficient bases for common law claims...they are not the type of allegations at which the RICO statute was aimed, at least so long as the focus of the case is the relationship between plaintiffs and defendants." Id. at 504. Here, too, the evidence does not satisfy the "continuity" requirement. The Officers, therefore, are entitled to summary judgment on the RICO claim.

### E. The Officers Are Entitled To Summary Judgment On The First Amendment Claim

Count II is a Section 1983 claim for violation of plaintiff's First Amendment Rights of free speech. The Officers are entitled to summary judgment on this claim because it is barred by the statute of limitations; the speech at issue is a matter of private, not public concern; and plaintiff has not suffered a First Amendment injury required for the Section 1983 claim.

1. <u>The Statute of Limitations On The First Amendment Claim Has Expired</u>.

Plaintiff's claim, brought under Section 1983, must be brought within two years from the date of the incident. Kalimara v. Illinois Department of Corrections, 879 F.2d 276, 277 (7th Cir. 1989). The incidents here all occurred in 1997. Plaintiff has had no contact with any of the Officers since 1997. Undisputed Fact Nos. 31-36. The statute of limitations for Count II thus expired in 1999. The claim was first filed on September 21, 2001. The Officers are entitled to summary judgment on Count II because it is barred by the statute of limitations.[9]

---

[9]Although plaintiff has had no contact with any of the Officers since 1997, plaintiff testified that he has heard from third parties in 2001 that the "fat" officer had been asking about, and making verbal threats about, plaintiff. This conduct, even if proven, does not extend the statute of limitations for the First Amendment claim because the verbal threats of one Officer four years later are not part of a "continuing course of conduct." See Selan v. Kiley, 969 F.2d 560

13

## 2. The Plaintiff's Speech Is Not Constitutionally Protected.

In order to prove a violation of his First Amendment Rights, plaintiff must prove, among other things, that his speech is constitutionally protected. Kokkinis v. Ivkovich, 185 F.3d 840, 843 (7th Cir. 1999). For speech to be constitutionally protected, it must be a matter of public, not private, concern. Id. It is appropriate on summary judgment to determine if speech is a matter of private, rather than public, concern. Id. at 1388 n.4.

The fact that statements are made in the course of a news program does not alone render the statements constitutionally protected. Kokkinis v. Ivkovich, 185 F.3d 840, 844 (7th Cir. 1999). Nor is all speech relating to government a matter of public concern. Vukadinovich v. Bartels, 853 F.2d 1387, 1390 (7th Cir. 1988). Speech may address a matter of public concern, but the test is whether the speech was made to raise issues of public concern because they are of public concern, or to further some purely private interest. Id. "[T]here is a difference between criticism directed at the institution in general and disputes with which the complainant has an intimate personal involvement." Egger v. Phillips, 710 F.2d 292, 318 (7th Cir. 1983) (*en banc*).

Here, plaintiff's statements were not about the police department in general, or about police misconduct in general. Plaintiff's statements all addressed how the specific Officers were treating his cousin and him. Undisputed Fact Nos. 11, 12, 66, 67. His statements to OPS regarding his own arrests or stops are related only to a private dispute. So, too, are plaintiff's his statements that specific Officers choked his cousin a matter of private concern arising out of a private dispute. "It is important not to equate the public's curiosity abut a matter with the matter

---

(7th Cir. 1992)(the court, affirming summary judgment on the statute of limitations, held that the passage of more than two years between incidents "weighs heavily against finding a continuing violation," even though the acts were of a similar nature).

14

having societal ramifications." Vukadinovich, *supra*, 853 F.2d at 1391.

### 3. Plaintiff Has Suffered No Injury Sufficient To Confer Standing Under Section 1983

In order to bring a Section 1983 claim, the plaintiff must have been deprived of some legally cognizable interest. Linhart v. Glatfelter, 771 F.2d 1004, 1008 (1985). Accord, Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) ("Section 1983 is a tort statute. A tort to be actionable requires injury."). Cf. Laird v. Tatum, 408 U.S. 1, 14 n.7 (1972). Here, plaintiff admits that at no time was he ever chilled. Undisputed Fact Nos. 66-69. In the absence of a First Amendment injury suffered by plaintiff, the Officers are entitled to summary judgment on Count II.

### F. Count V Is Barred By The Statute Of Limitations.

Count V is a state law claim for Intentional Infliction of Emotional Distress. State law claims against the police officers must be brought within one year from the date the cause of action accrued. See Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101 (1994). For the same reasons that the two-year statute of limitations bars Count II (See Section E(1), *supra*), the one-year statute of limitations bars Count V.

WHEREFORE, the Officers respectfully request that this Court grant judgment in their favor on Count I (RICO), Count II (Section 1983 First Amendment claim), Count IV (state law claim for malicious prosecution) and Count V ( intentional infliction of emotional distress).

Respectfully submitted,

*[signature]*
Sheri H. Mecklenburg
Assistant Corporation Counsel

30 N. LaSalle Street, Suite 1400
Chicago, Illinois 60602
(312) 744-6905

15